BOARD OF TRUSTEES OF POLICEMEN'S PENSION FUND
OF TERRE HAUTE *v.* STATE EX REL. RAUSCH ET AL.

[No. 27,122. Filed March 6, 1939. Rehearing denied
April 10, 1939.]

*B. F. Small,* for appellant.

*Paul R. Shafer,* for appellees.

TREMAIN, C. J.—This was an action by the State of
Indiana on the relation of Frank B. Rausch against the
Board of Trustees of the Policemen's Pension Fund of
the City of Terre Haute, in which the relator sought to
mandate the board to admit him to membership in said

fund. The complaint was answered by general denial and by an affirmative paragraph pleading facts relied upon as a defense. There was a reply in general denial to the affirmative paragraph of answer. A trial was had by the court which resulted in a judgment in favor of the relator. A motion for a new trial was filed and overruled, upon which ruling error is assigned that the decision was not sustained by sufficient evidence and is contrary to law.

All of the evidence is stipulated and may be summarized as follows: That Terre Haute, during all of the time mentioned in the complaint, was a second class city and maintained a metropolitan police force; that the police force was in existence at the time of the enactment of chapter 129 of the Acts of the General Assembly of 1905, known as the Cities and Towns Act; that said act provided for the organization of a Policemen's Pension Fund, but no steps were taken to organize that fund until March 9, 1909, at which time a board of trustees of the pension fund was appointed in accordance with the provisions of that act and the amendments thereto, which Policemen's Pension Fund and the board of trustees for the management thereof have been maintained since its organization.

On December 8, 1881, the city, by an ordinance, created the city board of health, which was in active existence at the time of the passage of the 1905 act and was continued in operation as provided in section 213 of that act. The city ordinance created a city board of health, prescribed its general duties, provided for health officers and sanitary policemen, provided for their appointment, and prescribed their duties. See sections 4, 5, 6, and 7 of the ordinance. By that ordinance the board of health appointed one of their number to act as health officer for the term of one month, and that the members of the board should alternate thereafter. It

was the duty of the health officer, by the aid of the sanitary police, under the orders and directions of the board of health, to examine and inspect meats, articles of food offered for sale, and all places and sources of filth likely to become nuisances, and upon order of the board to abate and remove the same.

Section 6 provided that:

"The Police Board may in their discretion, with the concurrence of the Common Council, appoint sanitary policemen, who shall act in aid of and under the direction of the Board of Health, in enforcing the provisions of this Ordinance, and the regulations and rules of the Board of Health."

Section 7 of the ordinance made it the duty of the metropolitan police to aid the board of health in the enforcement of the ordinance. No additional ordinances were passed thereafter, although chapter 129 of the Acts of 1905, by sections 213, and 214, sections 48-7401 and 48-7402 Burns' Ind. St. 1933, sections 11532, 11533 Baldwin's Ind. St. 1934, provided for a health department similar to that created by the ordinance of 1881, but the provisions of the ordinance were considered as a compliance with said sections and no changes were made in the organization; that the board of public safety, which was the police board of the city of Terre Haute, appointed sanitary policemen upon the nomination of the board of health for the purpose of performing the duties specified in section 6 of the ordinance of 1881, and continued so to do under the act of 1905, "and has continued to so appoint such officers ever since, under and by virtue of said ordinance of December 8, 1881, and said Act of 1905;" that the office of sanitary policeman always has been treated by the various administrations as a political office; that persons appointed as sanitary policemen were, throughout all the years, discharged upon the election of a new city ad-

ministration, and the vacancies created filled by the incoming administration.

That at the general city election of 1905 a new administration was elected to take office in January, 1906; that the new mayor appointed a new board of safety for the city; that on September 3, 1906, the board of safety named and appointed the relator, Frank B. Rausch, as a sanitary policeman for the city. The appointment was in writing and he took and subscribed an oath of office to the effect that he would faithfully and impartially discharge his duties as sanitary officer of the police force of the city, and was duly installed in office as a sanitary police officer in the department of health, and discharged such duties pursuant to section 6 of the ordinance of 1881 and the act of 1905 and amendments thereto; that at the general city election of 1909 a new administration was elected and served until 1914; that the relator continued to serve under said prior appointment "as a sanitary officer of said city and to discharge his duties as such under said Section 6 of said ordinance of 1881 and said Acts of the General Assembly up until January, 1914;" that at the general city election in 1913 a new city administration was elected and inducted into office; that the relator continued under said administration as sanitary officer until January 7, 1914, "at which time he was orally directed by said mayor to report for duty with the metropolitan police department of said city;" that he so reported and was assigned by the chief to perform patrol duty.

Under direction of the mayor and the chief of police the relator rendered police patrol duty and continuously thereafter rendered such services as a member of the metropolitan police force; that prior to his appointment as a member of the metropolitan police force and during the time he was serving as a sanitary officer, he

was assigned to special duty, "such as policing dances, picnics, athletic contests, and other special gatherings and occasions;" that when the relator performed said special duties both prior and subsequent to January 7, 1914, he "turned over and delivered to the Policemen's Pension Fund of said city the compensation and rewards which he has received for such special services and for lost or stolen articles recovered, or criminals apprehended." That at all times since January 7, 1914, the relator performed the same duties as other members of the metropolitan police force; that the services rendered by him as said policeman have been satisfactory; that, since January 7, 1914, he received and wore the same uniform, and received the same pay as other members of the metropolitan police force who bore the same rank and performed the same duties. He has served in the capacity of patrolman, police sergeant, police lieutenant, acting captain of police, and in various other capacities, and was so serving at the time this action was filed.

That said relator "has never been treated or regarded by the Police Pension Board of said city as a member of said Policemen's Pension Fund, and that no percentage of his wages has ever at any time been deducted and turned over to said Fund; that a portion of the salary of all other members of said metropolitan police force, regularly appointed, when they have been admitted to said Fund, has been deducted from their wages and turned over to said Fund, as by law provided, but that no such contributions have ever been required, or accepted, from the said Rausch.

"That the said Rausch was born December 28, 1867, and was thirty-eight years, eight months, and five days old at the time of his appointment as a sanitary police officer; that he was forty-seven years and ten days old

on January 7, 1914, at the time he was transferred to patrol duty."

That afterwards on March 4, 1914, at a meeting of the board of trustees of the Policemen's Pension Fund, the board on its own motion took up the matter of admitting relator as a member of the fund and rejected him upon the ground that he was disqualified by reason of his age; that afterwards on March 5, 1928, the relator made application to the trustees of the Policemen's Pension Fund for membership. The application was considered at a meeting of the board March 7, 1928, and carried over until April 4, 1928, when it was further considered, and was finally terminated May 2, 1928, by his rejection as a member on account of his age, and the further fact that relator had never been enrolled as a member or assessed or suffered any deductions from his salary; that, if relator had been eligible to enrollment, he should have taken steps to procure such enrollment prior to the act of March 7, 1913, which created restrictive qualifications, among which was a provision that an applicant for membership and enrollment in the Policemen's Pension Fund shall not be over 35 years of age, and must pass a physical examination. The relator did not undergo a medical examination or ask to be examined, nor did he contribute to the pension fund at the time. His salary was treated and deemed exempt from assessment for the pension fund.

On April 25, 1935, the relator made another application to be admitted to membership in said fund, and submitted to a medical examination. The physician making the examination reported the relator as being in unsound health and not acceptable to membership. After his rejection he filed this action October 5, 1935, to mandate the trustees of the pension fund to admit him to full membership thereto as and from September 3, 1906. He voluntarily tendered and paid into the office

of the clerk of the circuit court the sum of $542.05, which he thought to be the amount of assessment he should have paid into said fund had he been admitted September 3, 1906. The trustees did not accept or request the tender.

Upon the foregoing agreed facts the court rendered judgment adjudging the relator to have been a member of the police force of the city of Terre Haute since the 9th day of March, 1909, and entitled to all the rights and benefits thereof, and subject to the duties and liabilities of members of said fund. Relator was ordered to pay to the trustees the aggregate amount of all assessments against him which inured under the law as a member of said fund. The trustees were ordered to enroll the relator upon the pension roll as a member of the Policemen's Pension Fund.

It is conceded by the parties to this action that unless the relator was a member of the metropolitan police department of the city of Terre Haute prior to January 7, 1914, he is not entitled to membership in the fund. It was on that date that he was appointed by the newly elected mayor as a police patrolman, and was given the uniform of a policeman. At that time he was past 47 years of age. The act of 1913 provided that no policeman was entitled to become a member of the Policemen's Pension Fund who had passed the age of 35 years. Therefore, in order to sustain the judgment of the court, the burden rests upon the relator to establish that he was a member of the police force prior to 1913. He takes the position, and the lower court found, that he became a member of the police fund on the 9th day of March, 1909, and has been continuously a member thereof since that date. This claim is based upon the provisions of chapter 129, Acts 1905, which created the Policemen's Pension Fund, but the provisions of that act were not complied with, or

a fund provided for until March 9, 1909. At that time the relator was employed by the city in the department of health and sanitation, which had been created by a city ordinance in 1881, and which was specially provided for in the Cities and Towns Act of 1905. The board of health constituted at that time and now a separate department or entity charged with the performance of the duties specified in said ordinance and act. The trustees of the Policemen's Pension Fund, under other sections of the Cities and Towns Act, constituted another department or entity independent and separate from the board of health. The employees and officers of the two departments were appointed by different authorities and performed services of a different nature. There is nothing in the evidence to indicate that, during the eight years relator served as a sanitary officer in that department under his appointment of September 3, 1906, he claimed or considered himself to be a policeman appointed by and under the control of the department of public safety and eligible to become a member of the Policemen's Pension Fund. He was not so considered by the pension board; no assessments were made against him; nor did he tender or suggest the payment of assessments or request membership in the fund during the time he served as a sanitary officer. It appears from the agreed statement of facts that he was considered by all concerned as an employee of the department of health and not of the police department.

The only possible connection that he might claim was due to the fact that he appears to have received certain sums, the amount of which is not specified, by acting as a peace officer at certain social and athletic gatherings, the receipts from which he delivered to the pension fund. There is nothing in the evidence to show that he was asked to deliver such receipts to that fund, but his acts in that respect appear to be voluntary

upon his part. The law creating the pension fund provided for the receipt of donations thereto.

Immediately after the relator's appointment in January, 1914, as a patrolman upon the police force the board of trustees of the pension fund voluntarily, and without any application upon the part of the relator, investigated the right of the relator to become a member of the Policemen's Pension Fund, and determined that he was barred by the act of 1913 by reason of his age. Nothing was done after that date, either by the board of trustees or by the relator, until 1928, after he had served 14 years as a member of the police force, when he made an application to be admitted as a member of that fund. Upon that application the trustees held that because of his age he could not be admitted. In order to be admitted the act further provided for a medical examination, but the relator did not ask to be examined physically, nor did he furnish an examination made by any physician. The matter then rested until April 25, 1935, when he made another application to be admitted to membership in the fund and submitted to a medical examination. The physician appointed to examine him reported that he was not physically fit. This application was made and rejected 26 years after 1909, which is the date the trial court fixed as the beginning of the relator's membership to the fund.

It appears from the facts agreed upon by the parties that in 1909 the pension board was organized for the first time in the city of Terre Haute. It is affirmatively shown that the relator at that time was a member of the health department as a sanitary officer or policeman in that department. It is evident from the agreed facts that he did not consider himself a member of the fund or a policeman so as to be entitled to membership. He initiated no movement to become a member until 1928. The effort to have him admitted in 1914 was

initiated by the trustees of the pension fund. The late date upon which the relator filed this action may be regarded as some indication of his belief that he did not belong and could not become a member of the Policemen's Pension Fund prior to January 7, 1914, at which time age barred him from such membership.

Considering the evidence most favorable to the relator, and indulging in all inferences to be legitimately drawn therefrom most favorable to him, it cannot be said that the judgment of the trial court is sustained by sufficient evidence. On the contrary it affirmatively appears that the relator did not become, and was not, eligible to membership in the Policemen's Pension Fund of the city of Terre Haute until January 7, 1914, when he was barred by his age. There is nothing in the record to establish the fact that his relationship to the board of health in any manner qualified him to become a member of the Policemen's Pension Fund.

All the facts are agreed upon and before the court. Another trial is unnecessary. Therefore, the judgment is reversed, with directions to the trial court to render judgment in favor of the appellant.

Roll, J., absent.